THE STATE EX REL. CAWTHORN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Cawthorn v. Indus. Comm.* (1997), 78 Ohio St.3d 112.]

(No. 94–2734—Submitted January 21, 1997—Decided April 2, 1997.)

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellant.

*Per Curiam.* R.C. 4123.61, at the time of the initial injury herein, read:

" * * * [T]he claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins shall be the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants." (128 Ohio Laws 764–765.)

The statute is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.

"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.

The appellate court's reliance on *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 634 N.E.2d 1014, is misplaced. In that case, claimant Clark had been a full-time waitress before leaving her employment in 1986 to care for an abused grandchild. In 1988, she tried to return to the workforce on a limited basis in order to see how the grandchild would adjust to her absence from the home. Three weeks later Clark was injured on the job.

A district hearing officer initially set Clark's AWW at $13.49, dividing her wages during the year prior to injury ($53.94) by the four weeks that she had worked. A second hearing officer later reset the figure at $20, which reflected Clark's $10 hourly wage multiplied by the two hours per week that she was working at the time she was injured.

Still dissatisfied with the AWW amount, Clark appealed to staff hearing officers and submitted evidence showing that she was by then working full-time at a department store making $208 per week. The commission did not, however, find that this evidence warranted further AWW recalculation and affirmed the earlier order.

Upon appeal to this court, the commission's order was found to be unjust to Clark. We relied heavily on *Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 9 OBR 90, 458 N.E.2d 428, stressing that, like *Riley,* Clark had recently reentered the work force after an extended absence. Consequently, we found that Clark's short employment tenure was " 'obviously an unjust barometer of [Clark's] prospective future average wages that would be lost if [she] could not work.' " *Clark* at 566, 634 N.E.2d at 1016, quoting *Riley* at 73, 9 OBR at 93, 458 N.E.2d at 431.

*Clark* has been equated with the instant case based on submission both here and in *Clark* of evidence of increased post-injury earnings. This is too simplistic a comparison, for *Clark,* upon a closer review, differs significantly from this case.

First, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. Even after an initial increase, Clark's AWW was only $20, a figure which almost inherently and immediately raised substantial-justice concerns. Here, claimant's AWW was set at $256. This is not a figure that is inherently questionable, nor is it one where potential substantial-justice concerns are immediately apparent. Claimant's allegation of substantial injustice arose only when four years after his initial injury, claimant found himself making more money elsewhere. Thus, while the AWW in this case does not automatically negate a finding of substantial injustice, *Clark* clearly presented substantial-injustice concerns.

Second, unlike this case, it was not the mere increase in wages at a later time that generated further consideration in *Clark.* The key factor was the *reason* for that increase. Clark was making more money later because she was working more. The evidence of enhanced income was submitted to show that her earlier low wages resulted from a work pattern that when viewed in light of her work history was an aberration.

Claimant unquestionably made less while employed by Bollinger than he did at PSI. The difference, however, is not due to inconsistent or sporadic work opportunities that might be labeled a "special circumstance." Claimant worked full-time with Bollinger just as he did at PSI. Claimant made more at PSI not because he was working more hours, but because PSI chose to pay him more money than did Bollinger.

The commission did not, therefore, abuse its discretion in finding a lack of special circumstances sufficient to support claimant's proposed increase in his AWW.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., dissents.

ALICE ROBIE RESNICK, J., dissenting. I would affirm the judgment of the court of appeals.