[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 161.]

THE STATE EX REL. LEMKE, APPELLEE, *v.* BRUSH WELLMAN, INC.; INDUSTRIAL COMMISSION of Ohio, Appellant.

[Cite as *State ex rel. Lemke v. Brush Wellman, Inc.*, 1998-Ohio-319.]

*Workers' compensation—Industrial Commission ordered to vacate its ruling and recompute claimant's average weekly wage and permanent total disability compensation for an occupational disease, when.*

(No. 96-1353—Submitted June 24, 1998—Decided December 16, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 95APD06-735.

_____

*Calhoun, Benzin, Kademenos & Heichel Co., L.P.A.*, and *Philip J. Gauer,* for appellee.

*Betty D. Montgomery*, Attorney General, and *Michael A. Vanderhorst*, Assistant Attorney General, for appellant.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, urging affirmance for *amici curiae,* AFL-CIO and Ohio Academy of Trial Lawyers.

_____

*Per Curiam*.

{¶ 1} Under R.C. 4123.61, permanent total disability compensation ("PTD") for an occupational disease must be based on the employee's average weekly wage ("AWW") for the year before the disability began, unless "special circumstances" justify another basis. Appellant, Industrial Commission of Ohio, calculated appellee Galen Lemke's PTD based on his AWW in 1969, the year before he was diagnosed with berylliosis. In this appeal as of right, Lemke contends that the commission's order is substantially unjust because he continued to work, despite significant permanent partial impairment from the disease, for over eighteen years at higher salaries. We agree that these are special circumstances justifying

an AWW commensurate with Lemke's salary in 1989, the year before his disease forced him from the job market. For this reason, we affirm the court of appeals' judgment granting a writ of mandamus that orders the commission to recompute Lemke's AWW and PTD.

{¶ 2} Lemke was exposed to various forms of beryllium from 1959 to 1969 while working as a machinist for Brush Wellman, Inc. From 1969 until early 1970, he worked for another employer in tool and die manufacturing and then accepted employment from a third employer as a ceramic engineering technician. In February 1970, during a pre-employment physical, Lemke was diagnosed with berylliosis, a disease that compromises the respiratory system. He was twenty-nine years old.

{¶ 3} In October 1971, the Ohio Bureau of Workers' Compensation allowed his claim for berylliosis. But the allowance resulted only in the bureau's payment of Lemke's medical bills. The commission granted him no other compensation because he took no time off and continued to work just as he had before his diagnosis.

{¶ 4} In March 1972, the commission granted Lemke's application for permanent partial disability compensation, assessing a physical impairment of seventy-five percent. Lemke elected to be paid in a discounted lump sum and, again, continued to work notwithstanding the debilitating effects of his disease.

{¶ 5} In 1979, Lemke began consulting on his own in ceramic engineering. But by 1983, his condition had deteriorated to the extent that he needed help breathing. As a result, the bureau authorized payment, in addition to other medical treatment, for a three-thousand-dollar oxygen concentrator, plus a three-hundred-dollar hydrogen tank. Still, Lemke continued to work.

{¶ 6} In fact, Lemke continued to work until November 7, 1990, when he was hospitalized for "chest pain and marked increase in shortness of breath." His attending physician later advised that he could no longer work in his condition. He

was only fifty years old. In September 1991, the commission increased Lemke's percentage of permanent partial disability to eighty-five percent.

{¶ 7} Lemke applied for PTD in December 1990. The commission granted his application, but calculated his benefits based on his AWW in 1969. Lemke moved for an increase in benefits claiming that the AWW did not fairly compensate for the average future earnings he stood to lose. A registered nurse and administrator for Brush Wellman, Inc. also wrote in protest. She insisted that since Lemke had worked full-time until 1990, his PTD should be based on the salary he had reached by the end of his career, not on a salary he earned years before. We agree that this claimant should not be penalized, in effect, for his years of productivity in the face of distending and relentless incapacitation.

{¶ 8} The standard formula in R.C. 4123.61 for establishing AWW is to divide the claimant's earnings for the year preceding the beginning of an occupational disease or injury by fifty-two weeks, *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 565, 634 N.E.2d 1014, 1016; however, the presence of "special circumstances" warrants any method that promotes substantial justice. Thus, when an employee who had never before needed a job was injured shortly after entering the work force, his AWW and corresponding disability compensation could not justly be based only on the three weeks that he had worked. *Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 73, 9 OBR 90, 92, 458 N.E.2d 428, 430. And when employees have aspired to full-time work in the year before an on-the-job injury but, due to circumstances beyond their control, have actually worked only a fraction of the standard fifty-two forty-hour weeks, we have ordered the commission to equitably account for their unemployment in setting the AWW. *Clark*, 69 Ohio St.3d at 566, 634 N.E.2d at 1016-1017; *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 551 N.E.2d 1265. Indeed, the special-circumstances exception is provided so that the AWW formula does not penalize the injured employees who tried to earn an income but failed. *Wireman* at 288, 551

N.E.2d at 1267; *Smith v. Indus. Comm.* (1986), 25 Ohio St.3d 25, 25 OBR 21, 494 N.E.2d 1140.

{¶ 9} An employee who is able to earn a living only by persevering for more than eighteen years while losing ground to insidious occupational disease should be compensated equitably for his or her disability. And we specifically distinguish Lemke from the employee in *State ex rel. Cawthorn v. Indus. Comm.* (1997), 78 Ohio St.3d 112, 676 N.E.2d 886, who wanted his established AWW raised just because he aggravated his allowed injury while making more money. That employee's AWW was set at $256, whereas Lemke's AWW was only $52.50, an amount so low that it manifestly raises the spectre of inequity. Moreover, Lemke had increased his earnings because he would not submit to his disease, not because he recovered and got a better job, as did the employee in *Cawthorn. Id.* at 115, 676 N.E.2d at 888.

{¶ 10} This is the uncommon situation for which the special-circumstances exception in R.C. 4123.61 exists — when the AWW is based on an "obviously * * * unjust barometer of [the claimant's] prospective future average wages that would be lost if [the claimant] could not work.' " *State ex rel. Clark*, 69 Ohio St.3d at 566, 634 N.E.2d at 1016, quoting *Riley*, 9 Ohio App.3d at 73, 9 OBR at 93, 458 N.E.2d at 431. Therefore, we hold that the commission abused its discretion in setting Lemke's AWW according to his earnings for the year before his diagnosis. Accordingly, we affirm the judgment of the court of appeals granting a writ of mandamus that orders the commission to vacate its ruling and to incorporate in its AWW calculation Lemke's earnings for the year before he could no longer work.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in the judgment only.

_____