DECISION
{¶ 1} Relator, Christine Nanstiel, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her motion to reset her average weekly wage ("AWW"), and to enter an order granting such motion.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ. (Attached as Appendix A.)
 {¶ 3} Relator has filed an objection to the magistrate's decision. In her objection, relator raises the same argument she presented before the magistrate, asserting that, pursuant to State ex rel. Price v. Cent.Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, she has "special circumstances" that would warrant a recalculation of her AWW. The magistrate, however, concluded that relator's AWW increase from $159.20 to $364.84 during an approximate 10-year period was not uncommon, and, thus, did not constitute special circumstances as contemplated by Stateex rel. Price (in which claimant Price's AWW was set at $56 per week, and he continued to work for 28 years, at which time his AWW was $484.44). We agree, and find that the commission did not abuse its discretion in finding a lack of special circumstances sufficient to support relator's request for an increase in her AWW.
 {¶ 4} Based upon this court's independent review, pursuant to Civ.R. 53, we overrule relator's objection and adopt the magistrate's decision as our own, including the findings of facts and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objection overruled; writ denied.
KLATT and McGRATH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Christine Nanstiel, :
 Relator, :
v. : No. 04AP-1153
Shonac Corporation and Industrial : (REGULAR CALENDAR)
Commission of Ohio, :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on April 20, 2005
Kennedy Colasurd Co., L.P.A., and Michael D. Colasurd, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, Christine Nanstiel, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her motion to reset her average weekly wage ("AWW") and to enter an order granting her motion.
Findings of Fact:
 {¶ 6} 1. On December 18, 1990, relator sustained an industrial injury while employed with respondent Shonac Corporation, a state-fund employer. The industrial claim is assigned claim number 90-49075.
 {¶ 7} 2. The Ohio Bureau of Workers' Compensation ("bureau") calculated AWW to be $159.20 based upon relator's earnings during the year prior to the date of her industrial injury.
 {¶ 8} 3. On November 14, 2000, Dr. Massau completed a C-84 certifying that relator became temporarily and totally disabled as of November 9, 2000.
 {¶ 9} 4. On November 18, 2000, the bureau awarded temporary total disability ("TTD") compensation beginning November 9, 2000, based upon Dr. Massau's C-84. Apparently, TTD compensation was terminated by a district hearing officer effective April 25, 2002, based upon a finding that the industrial injury had reached maximum medical improvement.
 {¶ 10} 5. On October 23, 2003, relator filed an application for permanent total disability ("PTD") compensation. Apparently, relator stated on her application that November 8, 2000 was the last date that she had worked.
 {¶ 11} 6. On May 5, 2004, a commission staff hearing officer ("SHO") issued a tentative order awarding PTD compensation beginning October 16, 2003.
 {¶ 12} 7. The bureau determined that PTD compensation is payable at a weekly rate of $159.20. This PTD rate is relator's AWW as initially determined. As indicated by a table of compensation rates provided by the commission in this action (appendix to commission's brief), based upon the statewide average weekly wage ("SAWW") of $419 for calendar year 1990, the maximum PTD rate is $279.33 ($419 x 66 and two-thirds percent = $279.33) and the minimum PTD rate is $209.50 ($419 x 50 percent = $209.50) for an injury that occurred in 1990. Because relator's AWW fell below the PTD minimum for 1990, relator's PTD rate is her AWW of $159.20. See R.C.4123.58.
 {¶ 13} 8. Thereafter, citing State ex rel. Price v. Cent. Serv.,Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, relator moved that her AWW be adjusted based upon her wages during the year prior to the date that she left the workforce due to her industrial injury.
 {¶ 14} 9. In support of her motion, relator submitted her affidavit stating:
Affiant states that she was injured on approximately December 18, 1990, while working for Shonac Corporation.
Affiant states that she returned to work for Shonac Corporation and over the next number of years, worked and became temporarily and totally disabled on several occasions.
Affiant further states that prior to her last date worked in 2000, she had been regularly and consistently employed at much higher wages than she was earning for the year prior to her injury.
Affiant states that she was employed for at least the entire 52 weeks prior to her last date worked. She had two employers, Advanced Store and Value City Department Stores (Shonac Corporation).
 {¶ 15} 10. In her motion, relator calculated that her year 2000 AWW is $364.84 based upon the 52 weeks prior to the last day she worked.
 {¶ 16} 11. If the commission were to calculate a new PTD rate based upon relator's 2000 AWW, the new rate would be the minimum PTD rate for the year 2000 which is $294.50. This new rate would be calculated by multiplying her AWW of $364.84 by 66 and two-thirds percent ($364.84 x 66 and two-thirds percent = $243.22) and then adjusting the rate upward to the PTD minimum rate of $294.50 for the year 2000.[1] See R.C. 4123.58.
 {¶ 17} 12. On July 21, 2004, an SHO heard relator's motion to adjust her AWW. The SHO also heard relator's motion to adjust the start date for the PTD compensation. Following the hearing, the SHO issued an order adjusting the PTD compensation start date but denying relator's motion to adjust AWW. The SHO's order states in part:
As regards the claimant's motion requesting relief pursuant [to] thePrice case, the Staff Hearing Officer finds that there is insufficient evidence of `special circumstances' as articulated by the Price case to justify an adjustment in the claimant's average weekly wage. Specifically, the Staff Hearing Officer notes that the date of injury was 12/18/1990. The claimant last worked on 11/08/2000 and the last period of temporary total disability compensation that she received began on 11/09/2000. Evidence supplied at hearing today indicates that during the 10 year period from 1990 through 2000 the claimant was on temporary total disability compensation in three separate years (1994, 1995, and then again in 1998). While the claimant's counsel did provide wage information for the year precedent to the date she last worked, there is insufficient evidence over the rest of the decade in question that reasonably indicates that the claimant worked in a steady and uninterrupted manner in the way that the claimant in the Price case was employed. The fact that the claimant may have earned a higher wage rate for roughly a year, just prior to her leaving the work force does not in and of itself justify relief pursuant to that case as this claimant's situation is significantly different from the special circumstances that were present in Price. Most notably, in Price the claimant was injured at a remote point in the past and was able to work relatively uninterruptedly for a significant period of time following that until the injuries for which the claim was recognized removed that individual from the work force. In the case sub judice, there is insufficient indication that the claimant worked in such an uninterrupted and continuous fashion over the 10 year period in question. The fact that an individual will likely earn a higher wage at a later point in their working life is a naturally anticipated characteristic of the work environment. That in and of itself does not automatically qualify for relief in the manner that the claimant wishes.
Accordingly, for these reasons the Staff Hearing Officer finds the claimant's request for relief pursuant to Price is without merit and is properly denied.
 {¶ 18} 13. On August 24, 2004, the SHO issued a corrected order that does not alter the language of the order pertinent to this action.
 {¶ 19} 14. On October 8, 2004, the commission mailed an order denying relator's motion for reconsideration of the SHO's order.
 {¶ 20} 15. On October 25, 2004, relator, Christine Nanstiel, filed this mandamus action.
Conclusions of Law:
 {¶ 21} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 23} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 24} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 25} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, and State ex rel. Lemke v.Brush Wellman, Inc. (1998), 84 Ohio St.3d 161.
 {¶ 26} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 27} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 28} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 29} After a lengthy discussion of its previous decision in Lemke,
the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. ThePrice court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section 4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C.4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that "will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 30} Thus, the Price court (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61, and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 31} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguishedLemke; however, Gillette is instructive here.
 {¶ 32} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 33} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 34} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations."State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 288,551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
 {¶ 35} Here, the commission properly held that the Price case does not compel it to adjust AWW and the PTD rate.
 {¶ 36} The court's decision in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, cited by the Gillette court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wiremanv. Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 37} The court's decision in State ex rel. Clark v. Indus. Comm.
(1994), 69 Ohio St.3d 563, is also instructive here. In Clark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 38} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 39} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 40} Here, relator fails to show special circumstances and she fails to show that her AWW is substantially unjust in producing a PTD weekly compensation rate of $159.20.
 {¶ 41} Relator was injured in 1990 with an AWW of $159.20. She continued to work another ten years. During the year prior to her workforce departure, relator allegedly had an AWW of $364.84. In sum, relator's wages more than doubled during the decade following her industrial injury. If relator's motion to reset her AWW were to be granted, her PTD rate would be $294.50 which is almost double the PTD rate of $159.20 she is now receiving.
 {¶ 42} The magistrate further notes that relator's AWW of $159.20 is below the PTD minimum rate of $209.50 for the year 1990. $209.50 is 50 percent of the SAWW for the year 1990. Because relator's AWW falls below the statutory minimum PTD rate, the commission is statutorily required to set the PTD rate at AWW. There is no upward adjustment under the statute under these circumstances. See R.C. 4123.58.
 {¶ 43} The magistrate further notes that the Price case involved an injury that occurred in 1969 when the PTD rate was not tied to the SAWW. In the year 1973, the General Assembly first tied the PTD rate and other compensation rates to the SAWW. (See commission's brief, appendix A.)
 {¶ 44} As the court observed in Gillette, an increase in wages over time is not uncommon and does not constitute "special circumstances." Here, it could be said that relator's AWW increase from $159.20 to $364.84 during a ten-year period is not uncommon, and thus cannot constitute "special circumstances."
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Compare the commission's calculation here of the new PTD rate. The commission here calculates the new PTD rate to be $243.22 by failing to adjust it upward to $294.50. See commission's brief, at 6.