DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Stella J. Shockley, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her motion to reset her average weekly wage ("AWW"), and to enter an order granting such motion.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision. In her objections, relator argues, as she did before the magistrate, that the commission abused its discretion in failing to find, pursuant toState ex rel. Price v. Cent. Serv., Inc., 97 Ohio St.3d 245,2002-Ohio-6397, that she has "special circumstances" warranting a recalculation of her AWW. Relator also contends that the magistrate erred in relying upon two Ohio Supreme Court decisions, State ex rel. Gillettev. Indus. Comm. (2002), 95 Ohio St.3d 20, and State ex rel. Clark v.Indus. Comm. (1994), 69 Ohio St.3d 563, while failing to consider precedent set forth in State ex rel. Lemke v. Brush Wellman, Inc. (1998),84 Ohio St.3d 161.
 {¶ 4} The magistrate concluded that relator's AWW increase from $177.77 to $434.80 over a 17-year period was not uncommon and, therefore, did not constitute special circumstances under State ex rel. Price (wherein claimant-Price's AWW was set at $56 per week, and he continued to work for 28 years, at which time his AWW was $484.44).
 {¶ 5} Upon review, we agree with the magistrate that the commission did not abuse its discretion in finding a lack of special circumstances sufficient to support relator's request that the commission reset her AWW. We find no error with the magistrate's reliance upon State ex rel.Gillette, at 23, for the proposition that "an increase in wages over time is not uncommon and does not constitute a `special circumstance.'" Nor do we find error with the magistrate's citation to State ex rel. Clark, as merely illustrative of a case supporting a "special circumstance" award. See State ex rel. King v. Indus. Comm., 99 Ohio St.3d 85, 2003-Ohio-2451, at ¶ 17 (citing State ex rel. Clark for the same proposition). Finally, we do not find dispositive relator's reliance upon State ex rel. Lemke, a case involving an occupational disease, and in which the employee's AWW was set at only $52.50, an "amount so low that it manifestly raises the spectre of inequity." Id. at 164.
 {¶ 6} Based upon this court's independent review, pursuant to Civ.R. 53, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Bryant and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Stella J. Shockley, :
 Relator, :
v. : No. 05AP-48
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Kauffman-Lattimer Co. Division, :
Alco Health Svcs Group, Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 22, 2005 Agee, Clymer, Mitchell Laret, and Robert M. Robinson, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Porter Wright Morris Arthur LLP, and Christopher C. Russell, for respondent Kauffman-Lattimer.
 IN MANDAMUS {¶ 7} In this original action, relator, Stella J. Shockley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her motion to reset her average weekly wage ("AWW") and to enter an order granting her motion.
Findings of Fact:
 {¶ 8} 1. On June 11, 1982, relator sustained an industrial injury while employed with respondent Kauffman-Lattimer Company, a state-fund employer. The industrial claim is assigned claim number 82-39639.
 {¶ 9} 2. Apparently, sometime in 1982, AWW was set at $171.77 based upon relator's earnings during the year prior to the date of her industrial injury, as provided by R.C. 4123.61.
 {¶ 10} 3. Relator continued to work during the years following her industrial injury. However, in August 1999, she left the workforce to have surgery and never returned. During the year prior to her workforce departure, relator's earnings averaged $434.80 on a weekly basis.
 {¶ 11} 4. On April 26, 2001, relator filed an application for permanent total disability ("PTD") compensation. On October 31, 2001, the commission awarded relator PTD compensation.
 {¶ 12} 5. On April 6, 2004, relator moved that her AWW be reset based upon her earnings in 1999. In her motion, relator claimed that she was employed for 32 weeks in 1999 and that she earned $14,602.64. Relator calculated her requested AWW to be $456.33. Based on the new AWW, relator requested that her weekly PTD rate be reset at $304.55 which is 66 and two-thirds percent of $456.33. (See R.C. 4123.58.)
 {¶ 13} 6. Following a June 16, 2004 hearing, a staff hearing officer ("SHO") issued an order resetting AWW and the weekly PTD rate. The SHO's order states:
After reviewing all of the evidence on file and considering the testimony of the injured worker, it is the order of the Staff Hearing Officer that the injured worker's C-86 motion, filed 04/06/2004, is granted to the extent of this order.
It is [the] finding of the Staff Hearing Officer that the injured worker has presented sufficient evidence to establish that readjustment of Average Weekly Wage with respect to permanent and total compensation.
The record shows that the injured worker sustained an injury in 1982 and continued to work for another 18 years despite her physical conditions. Her condition worsened and she left the workforce in 1999 to have surgery. She did not return to [the] workforce. She applied for permanent and total disability and was awarded permanent total disability on 10/31/2001.
The injured worker testified and the record reflects that since the date of her 1982 surgery [sic] she regularly received raises. In the year that she left the workforce the injured worker earned $10.87 per hour.
The Staff Hearing Officer finds that evidence clearly demonstrated special circumstances to warrant a recalculation of the injured worker's Average Weekly Wage. The Staff Hearing Officer finds that the facts presented here are identical to the facts in [State ex rel. Price v.Cent. Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397]. In that case the Ohio Supreme Court found that Price has established special circumstances to warrant readjustment of Average Weekly Wage with respect to permanent and total compensation.
It is the order of the Staff Hearing Officer that the injured worker's Average Weekly Wage is $434.80 based upon her hourly wage at the time that she left the workforce.
It is the further order of the Staff Hearing Officer that the injured worker is entitled to a readjustment of her permanent and total compensation based upon the new Average Weekly Wage. The readjustment of permanent and total shall commence on [the] date that the injured worker was awarded permanent and total compensation 10/31/2001.
 {¶ 14} 7. On July 9, 2004, the Ohio Bureau of Workers' Compensation ("bureau") moved for reconsideration of the SHO order of June 16, 2004.
 {¶ 15} 8. On July 28, 2004, the commission mailed an interlocutory order explaining why a reconsideration hearing was being granted.
 {¶ 16} 9. Following a September 1, 2004 hearing before the three member commission, the commission mailed an order vacating the SHO order of June 16, 2004. The commission's order of September 1, 2004 states:
It is the finding of the Industrial Commission that it retains jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v.Indus. Comm. (1998), 81 Ohio St.3d 454, due to a clear mistake of law. The Industrial Commission finds that the Staff Hearing Officer misappliedState ex rel. Price v. Cent. Serv., Inc. (2002), 97 Ohio St.3d 245, 2002
Ohio 6397. The injured worker did not have an increase in wages over time sufficient to invoke the special circumstances provision of R.C. 4123.61, which would warrant an increase in her average weekly wage.
The injured worker sustained an industrial injury on 06/11/1982. She returned to work for (17) years until her industrial injury forced her from the job market in 1999. The injured worker was making $10.87 per hour when she stopped working, or an average weekly wage of $434.80. The injured worker's average weekly wage in this claim is $171.77. The injured worker alleges that, based upon the length of her return to work and the increase in her salary over that time, her average weekly wage should be increased consistent with the holding in Price.
The Industrial Commission does not find special circumstances that would warrant an adjustment of the injured worker's average weekly wage under R.C. 4123.61. The injured worker's average weekly wage for her 1982 injury is $171.77. The Industrial Commission finds this to be an accurate representation of her average earnings at that time and is not an amount so low that it manifestly raises the spectre of inequity. Over the subsequent (17) years following her injury, the injured worker continued to work and receive wages such that her average weekly wage for the year prior to 1999, the last year she worked, is $434.80. The Industrial Commission finds that the injured worker's 1999 wages represent a normal increase that would be expected over time. The increase in wages in not sufficient to warrant an adjustment of the average weekly wage. The increase in the average weekly wage in Price was nearly tenfold over (26) years. In this claim, the increase is only approximately one and a half times greater over (17) years.
The Industrial Commission concludes that special circumstances do not exists that would warrant an increase in the injured worker's average weekly wage consistent with Price. Therefore, it is the order of the Industrial Commission that the C-86 motion filed 04/06/2004 is denied.
 {¶ 17} 10. On January 13, 2005, relator, Stella J. Shockley, filed this mandamus action.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} In State ex re. Price v. Cent. Serv., Inc., 97 Ohio St.3d 245,2002-Ohio-6397, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 20} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 21} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 22} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, and State ex rel. Lemke v.Brush Wellman, Inc. (1998), 84 Ohio St.3d 161.
 {¶ 23} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 24} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 25} After a lengthy discussion of its previous decision in Lemke,
the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. ThePrice court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section 4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C.4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that "will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 26} Thus, the Price court (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61, and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 27} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguishedLemke; however, Gillette is instructive here.
 {¶ 28} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 29} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 30} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations."State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 288,551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
 {¶ 31} Here, the commission properly held that the Price case does not compel it to adjust AWW and the PTD rate.
 {¶ 32} The court's decision in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, cited by the Gillette court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wiremanv. Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 33} The court's decision in State ex rel. Clark v. Indus. Comm.
(1994), 69 Ohio St.3d 563, is also instructive here. In Clark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 34} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 35} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 36} Here, the parties agree that relator's AWW of $171.77 produces a weekly PTD award of $149 which is the minimum rate for a 1982 injury. (See Commission's brief, at 6; and exhibits.)
 {¶ 37} Also, the SHO determined that relator's AWW should be reset at $434.80 based upon her 1999 workforce departure. If the SHO's AWW of $434.80 had been upheld by the three member commission, it would have produced an adjusted weekly PTD rate of $289.50, which is 66 and two-thirds percent of $434.80. (See "Compensation Rates" attached to the commission's brief.)
 {¶ 38} The magistrate further observes that relator had requested a new AWW of $456.33. Relator's requested AWW would produce a weekly PTD rate of $304.55.
 {¶ 39} As previously noted, relator was injured in 1982 with an AWW of $171.77. She continued to work for another 17 years until her injury forced her from the workforce. AWW was then at $434.80 based on an August 1999 workforce departure. Thus, relator's average weekly earnings had increased two and one-half times during the 17 years after the industrial injury. In the magistrate's view, this increase is not uncommon.
 {¶ 40} The magistrate further notes that the Price case involved an injury that occurred in 1969 when the PTD rate was not tied to the statewide average weekly wage ("SAWW"). In the year 1973, the General Assembly first tied the PTD rate and other compensation rates to the SAWW. (See commission's brief, appendix A.)
 {¶ 41} As the court observed in Gillette, an increase in wages over time is not uncommon and does not constitute "special circumstances." Hence, it could be said that relator's AWW increase from $171.77 to $434.80 over a 17 year period is not uncommon and, thus, cannot constitute "special circumstances."
 {¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.