THE STATE EX REL. STEVENS, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Stevens v. Indus. Comm.*,
110 Ohio St.3d 32, 2006-Ohio-3456.]

(No. 2005–1105—Submitted March 14, 2006—Decided July 19, 2006.)

---

**Per Curiam.**

{¶ 1} We are once again asked to consider whether a natural increase in earnings over the course of time is a "special circumstance" under R.C. 4123.61 that is sufficient to justify recalculation of an individual's average weekly wage. We hold that it is not, and in so doing, overrule both *State ex rel. Lemke v. Brush Wellman, Inc.* (1998), 84 Ohio St.3d 161, 702 N.E.2d 420, and *State ex rel. Price v. Cent. Servs., Inc.*, 97 Ohio St.3d 245, 2002-Ohio-6397, 779 N.E.2d 195.

{¶ 2} Charles Stevens had a heart attack at work in 1982, and a workers' compensation claim was allowed. His average weekly wage was set at $408.75, based on his wages for the year prior to injury.

{¶ 3} Stevens returned to the labor force and continued working for the next 15 years before dying from a second heart attack. His widow, appellant, Tina Stevens, filed a death claim, alleging that her husband's death was causally related to his earlier heart attack. Appellee, Industrial Commission of Ohio, agreed and awarded death benefits of $272.50 per week, which represented 66 2/3 percent of the decedent's average weekly wage—the standard dictated by R.C. 4123.59.

{¶ 4} Tina administratively appealed the order setting the benefit rate. She argued that the decedent was making considerably more at the time of his death than when he was originally injured. Relying on the "special circumstances" provision of R.C. 4123.61, she urged the commission to base the benefit rate on the decedent's average weekly wage for the year prior to death, which would have entitled her to a weekly rate of $521. When the commission declined to do so, appellant requested a writ of mandamus from the Court of Appeals for Franklin County ordering the commission to recalculate the benefit rate. The court of appeals denied the writ, prompting this appeal as of right.

{¶ 5} The baseline for all workers' compensation benefits is the average weekly wage, a figure intended as " 'a fair basis for award for the loss of future compensation.' " *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 287, 551 N.E.2d 1265, quoting *State ex rel. Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 73, 9 OBR 90, 458 N.E.2d 428. Unfortunately, attaining that goal has often proven inversely proportional to how distant the future is. Average weekly wage is based on earnings during the year preceding injury or the onset of occupational disease. R.C. 4123.61. Thus, what may have been, for example, fair compensation in 1980 generally falls far short in 2006, and this circumstance, in turn, generates requests for a resetting of the average weekly wage under the "special circumstances" provision of R.C. 4123.61.

{¶ 6} This provision permits the commission to abandon the standard computation "where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, * * * [and] in such cases, [the administrator] shall use such method as will enable him to do substantial justice to the claimants." While undefined, "special circumstances" have "generally been confined to uncommon situations." *Wireman,* 49 Ohio St.3d at 288, 551 N.E.2d 1265. We have emphatically stated that a natural increase in wages over the course of an employee's career is *not* uncommon and hence is not a special circumstance warranting a departure from the standard calculation. *State ex rel. Cawthorn v. Indus. Comm.* (1997), 78 Ohio St.3d 112, 676 N.E.2d

886; *State ex rel. King v. Indus. Comm.*, 99 Ohio St.3d 85, 2003-Ohio-2451, 789 N.E.2d 185.

{¶ 7} Seemingly, this should end the current discussion, but it does not. Two other cases must be addressed—*State ex rel. Lemke v. Brush Wellman, Inc.* (1998), 84 Ohio St.3d 161, 702 N.E.2d 420, and *State ex rel. Price v. Cent. Servs., Inc.*, 97 Ohio St.3d 245, 2002-Ohio-6397, 779 N.E.2d 195. Factually, the cases are very similar. Price's industrial injury was sustained in 1969, and Lemke's occupational disease was diagnosed in 1970. Both had their average weekly wages set based upon wages for the year prior to injury or diagnosis of occupational disease. Both claimants returned to the workforce after their industrial claims arose and continued to work for over 20 years until rendered permanently and totally disabled. Both were granted permanent total disability. Their awards, in turn, not only were based on their average weekly wage as originally set but were also subject to a statutory maximum rate that decades later became economically inadequate.

{¶ 8} In *Lemke,* the earlier of the two cases, the claimant sought to have his average weekly wage recalculated based on his wages for the year before his application for permanent total disability. We granted that request based on R.C. 4123.61's "special circumstances" provision, reasoning that "[a]n employee who is able to earn a living only by persevering for more than eighteen years while losing ground to insidious occupational disease should be compensated equitably for his or her disability." *Lemke,* 84 Ohio St.3d at 164, 702 N.E.2d 420.

{¶ 9} *Lemke* was a well-intentioned response to a very real problem. Its underlying reasoning, however, created more problems than it solved. In retrospect, the difficulty in *Lemke* derived more from the statutory compensation cap than from claimant's average weekly wage or how it was calculated under R.C. 4123.61. The special-circumstances provision did not, therefore, apply to the situation, and in using it in effect to circumvent the cap, *Lemke* has encouraged claimants whose average weekly wage as originally set did not keep pace with their increased income to seek recalculation of their average weekly wages.

{¶ 10} *Price,* in a similar situation, recognized that the statutory cap was the true source of the problem, but cited *Lemke* nonetheless. This has perpetuated the notion that an average weekly wage that is based on the date of the injury and that, over the course of years, either could not economically sustain the recipient or no longer approximated the income lost by a subsequent disability was a special circumstance sufficient to trigger recalculation of the average weekly wage. Unfortunately, this predicament will eventually happen to every injured worker whose claim stays active long enough.

{¶ 11} *Lemke* and *Price* responded to a difficult situation in a manner that has since proven to be confusing and unworkable from a practical perspective. This

suggests that a departure from these decisions may be appropriate pursuant to *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. *Galatis* authorizes us to depart from stare decisis and overrule a prior decision when "(1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." Id., paragraph one of the syllabus.

{¶ 12} We find that all three requirements of *Galatis* are satisfied. As to the first prong, we subsequently recognized that it was the statutory compensation cap, not the method of calculating average weekly wage, that was the source of the problem in both *Lemke* and *Price.* We have already discussed the practical problems that have subsequently arisen from those cases. Finally, abandoning the precedent would not create an undue hardship for the few persons who have successfully relied upon *Lemke* and *Price* in the past.

{¶ 13} Accordingly, we hereby overrule both decisions. We also repeat our entreaty to the General Assembly to address this shortcoming in the workers' compensation system and fashion a method to allow the average weekly wage to more accurately reflect, over time, the economic realities of the individual claimant or the economic landscape as a whole. Until then, however, we cannot permit the special-circumstances provision of R.C. 4123.61 to be the remedy to resolve this problem.

{¶ 14} Pursuant to *Cawthorn* and *King,* the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., Lundberg Stratton, O'Connor, O'Donnell and Lanzinger, JJ., concur.

Resnick and Pfeifer, JJ., dissent.

---

Alice Robie Resnick, J., dissenting.

{¶ 15} I dissent from the majority's decision to overrule *State ex rel. Lemke v. Brush Wellman, Inc.* (1998), 84 Ohio St.3d 161, 702 N.E.2d 420, and *State ex rel. Price v. Cent. Servs., Inc.,* 97 Ohio St.3d 245, 2002-Ohio-6397, 779 N.E.2d 195. Those cases properly reflect the underlying objective of the "special circumstances" provision in R.C. 4123.61, which is to reach a just determination of an employee's probable future earning capacity.

{¶ 16} Contrary to the majority's assertions, *Lemke* and *Price* do not require a readjustment of the average weekly wage as originally set whenever there is

evidence of a claimant's increased postinjury earnings. Nor has either of these cases encouraged claimants to seek recalculation of their average weekly wages in order to "keep pace with their increased income," as the majority suggests.

{¶ 17} Only a handful of claimants have filed mandamus actions to compel the Industrial Commission to recalculate their average weekly wages under *Lemke* or *Price*, and none were successful. In disposing of these actions, the Tenth Appellate District has experienced little difficulty in recognizing that *Lemke* and *Price* do not propose a departure from the standard calculation merely because of a natural increase in earnings over the course of time, but are instead limited to the situation where the claimant has an extremely long and consistent postinjury employment history and the application of the standard method yields a grossly unfair result. See *State ex rel. White v. Indus. Comm.*, 10th Dist. No. 06AP–6, 2006-Ohio-944, 2006 WL 496051; *State ex rel. Shockley v. Indus. Comm.*, 10th Dist. No. 05AP–48, 2005-Ohio-5706, 2005 WL 2787639; *State ex rel. Cooper v. Indus. Comm.*, 10th Dist. No. 04AP–706, 2005-Ohio-3099, 2005 WL 1432328.

{¶ 18} *Price* explains:

{¶ 19} " 'The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. This worker's disability reaches into the future, not the past; the loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of the worker's life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.' "  97 Ohio St.3d 245, 2002-Ohio-6397, 779 N.E.2d 195, at ¶ 17, quoting 5 Larson's Workers' Compensation Law (1987) 93–17, Section 93.01[1][g].

PFEIFER, J., concurs in the foregoing dissenting opinion.

———

Portman, Foley & Flint, L.L.P., and Frederic A. Portman, for appellant.

James Petro, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellee Industrial Commission.