DECISION
{¶ 1} Relator, Thomas White, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order in which it exercised its continuing jurisdiction and vacated the order of the staff hearing officer ("SHO"), granting relator's motion for an adjustment of his average weekly wage ("AWW"), and further ordering the commission to enter an order reinstating the SHO's order.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission properly exercised its continuing jurisdiction based on a clear mistake of fact and that relator has not demonstrated a clear legal right to a recalculation of his AWW. Accordingly, the magistrate determined that the requested writ of mandamus should be denied.
 {¶ 3} Relator filed objections to the magistrate's decision, in which he makes two arguments. First, he argues that the magistrate erred in finding that the commission properly based its exercise of continuing jurisdiction on a clear mistake of fact; to wit: the SHO's failure to set forth relator's actual AWW at the time of the last date worked in 1991. Relator argues that this omission related to an immaterial fact and, thus, does not constitute a clear mistake of fact. Second, relator argues that the magistrate erred by not giving consideration to relator's young age at the time of his injury and to relator's post-injury acquisition of skills and, thus, erred in finding that relator cannot show a clear legal right to a new AWW calculation.
 {¶ 4} In his objections, relator submits the same arguments that he made to the magistrate. The magistrate considered those arguments and rejected them. We agree with the magistrate's analysis and reasoning.
 {¶ 5} Based upon an independent review of the record, relator's objections to the magistrate's decision are overruled. We adopt the magistrate's decision, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Petree and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Thomas White, : Relator, : v. : No. 05AP-6 Industrial Commission of Ohio and : (REGULAR CALENDAR) Wheeling Pittsburgh Steel Corp., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 28, 2005 Ward, Kaps, Bainbridge, Maurer Melvin, L.L.C., and AndrewJ. Bainbridge, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Thomas White, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its March 16, 2004 order that exercised continuing jurisdiction to vacate a staff hearing officer's ("SHO") order that had granted relator's motion for an adjustment of his average weekly wage ("AWW"), and to enter an order reinstating the SHO's order.
Findings of Fact:
 {¶ 7} 1. On May 9, 1977, relator sustained an industrial injury while employed as a laborer for respondent Wheeling Pittsburgh Steel Corp.
 {¶ 8} 2. Relator's AWW in the claim was set at $295.98 based upon relator's earnings during the year prior to the date of injury as provided by R.C. 4123.61.
 {¶ 9} 3. On December 3, 1998, relator filed an application for permanent total disability ("PTD") compensation. Following a July 7, 1999 hearing, an SHO issued an order awarding PTD compensation starting September 15, 1998.
 {¶ 10} 4. On September 26, 2003, citing State ex rel. Pricev. Cent. Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, relator moved for an adjustment of his AWW to increase his weekly rate of PTD compensation. In his motion, relator claimed that February 14, 1991 was the last day he worked and that his AWW should be calculated based upon his earnings during the year prior to February 14, 1991. In his motion, relator claimed that his AWW should be reset at $612.85 and that his new PTD rate should be set at the statutory maximum of $428 for a 1991 industrial injury.
 {¶ 11} 5. Following a December 9, 2003 hearing, an SHO issued an order stating:
The C-86, filed 09/26/2003, is GRANTED TO THE EXTENT OF THIS ORDER.
Staff Hearing Officer finds that the purpose of compensation for Permanent Total Disability is to compensate for thepermanent loss of earnings, which of necessity must beprospective potential earnings; and that the most accurate measure of such are the earnings at the time Permanent TotalDisability brought about such loss, rather than the original injury that eventually resulted in Permanent Total Disability. In the instant case, claimant was able to continue working at ever increasing wages for an extensive period of time (15 years) before sustaining his future permanent loss of such increased
earnings.
Accordingly, pursuant to Price claimant's average weekly wage is set at $428.00 for the purpose of determining his rate of Permanent Total Disability. (Staff Hearing Officer notes parenthetically that his actual earnings in the year prior to the last date worked is well in excess of that, but also that $428.00 is the statutory maximum for that year).
In view of the ambiguity of ORC 4123.52's use of "application" and in consideration of ORC 4123.95, the Staff Hearing Officer holds that an application for Permanent Total Dis-ability, by its very nature being an application for monetary compensation for such Permanent Total Disability, that the Industrial Commission has jurisdiction to adjust the amount of monetary compensation awarded pursuant to such applica-tion for Permanent Total Disability to extend the two years prior to such Permanent Total Disability application. Inasmuch as claimant applied for compensation for Permanent Total Disability 12/03/1998, and was granted Permanent Total Disability from 09/15/1998 onward, the Staff Hearing Officer finds jurisdiction to amend as far back as 12/03/1996, and orders adjustment of Permanent Total Disability from 09/15/1998 onward to reflect the "average weekly wage" set herein.
(Emphasis sic.)
 {¶ 12} 6. On December 22, 2003, the administrator of the Ohio Bureau of Workers' Compensation ("administrator") moved the commission for reconsideration of the SHO order of December 9, 2003. The administrator's five-page memorandum in support claimed that the SHO's order contained a clear mistake of fact and clear mistake of law. In a paragraph captioned "Introduction and Facts," the memorandum states:
On September 26, 2003, the claimant filed a motion requesting the commission make a finding of special circumstances and adjust his AWW to $612.85 in accordance with Price v. Central Services
(2002) 97 Ohio St.3d 245. The wage request is based upon his earnings in 1991, the last year the claimant worked. It is noteworthy that the statutory maximum for 1991 is $428.00 per week, so any adjustment in the AWW is subject to that maximum. At a hearing held on December 9, 2003, the Staff Hearing Officer (SHO) granted the claimant's motion and adjusted the wages to $428.00, the statutory maximum for 1991. In addition, the SHO awarded the new PTD rate, effective the date the claimant was awarded PTD. It is from this order that the Administrator requests reconsideration.
 {¶ 13} In the remainder of the memorandum, the administrator argued that the SHO erred when he found special circumstances under Price and when he awarded compensation in excess of two years prior to the date of the PTD application.
 {¶ 14} 7. On January 29, 2004, the commission mailed an interlocutory order stating:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsidera-tion regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer misapplied Revised Code 4123.52 by finding an adjustment in excess of two years prior to the motion's filing, and the Staff Hearing Officer misapplied the Price case, and mistakenly limited the average weekly wage to $428.00 when the evidence indicated the average weekly wage should be $612.85.
Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 12/22/2003 is to be set for hearing to determine if the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue.
This order is issued pursuant to State ex rel. Nicholls v.Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 15} 8. Following a March 16, 2004 hearing, the three-member commission issued an order stating:
* * * [I]t is the decision of the Industrial Commission that the Administrator's request for reconsideration, filed 12/22/2003, is granted and that the order of the Staff Hearing Officer, dated 12/09/2003, is vacated.
The Industrial Commission finds that it retains continuing jurisdiction to correct a clear mistake of fact, pursuant [to] O.R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm.
(1998) 81 Ohio St.3d 454. The Administrator has presented evidence of a clear mistake of fact in the Staff Hearing Officer order, dated 12/09/2003, which necessitates remedial action. Specifically, the parties agree that the Staff Hearing Officer's calculation of the injured worker's average weekly wage was incorrectly set at $428.00, and that the wage information establishes that during the year prior to 02/14/1991 (the last date of employment), he earned an average weekly wage of $612.85. Accordingly, the Industrial Commission exercises its continuing jurisdiction to address the merits of the injured worker's motion, filed 09/26/2003.
It is the order of the Industrial Commission that the injured worker's motion, filed 09/26/2003, is denied. The injured worker's request to adjust the average weekly wage in accordance with the Price decision is denied.
Based upon his earnings during the year before his injury on 05/09/1977, the injured worker's average weekly wage was set at $295.98. Except for periods of total disability due to surgeries and exacerbations of his lower back condition, the injured worker continued working for nearly fourteen years. He last worked on 02/14/1991, at which time he was earning an average weekly wage of $612.85.
The injured worker supports his request to adjust the average weekly wage upon the Supreme Court's decision in State ex rel.Price v. Central Services (2002), 97 Ohio St.3d 245. Price's average weekly wage initially was set at $56.00, the maximum rate for his 1969 date of injury. He continued working until 1997, at which time he earned $484.44 per week. By the time Price's allowed conditions "forced him from the workforce" twenty-seven years later, his average weekly wage increased more than eight-fold. The court found Price's average weekly wage was so low that it "manifestly raised the spectre of inequity," thereby justifying a re-calculation of the average weekly wage to reflect the increase in his earnings. The court noted Price's demonstration of a "reliable, long-term earning capacity resulting in a significantly higher actual wage."
It is the finding of the Industrial Commission that when compared to Price's average weekly wage of $56.00, the injured worker's average weekly wage of $295.98 is not so low as to "manifestly raise the spectre of inequity." Further, the injured worker's return to the workforce for fourteen years fails to establish a "reliable, long-term earning capacity resulting in significantly higher actual wages," when compared to Price's eight-fold increase in earnings over a twenty-seven year period.
Based upon the foregoing, it is the finding of the Industrial Commission that the injured worker has not demonstrated any special circumstances that justify a re-calculation of the average weekly wage, based upon his earnings during the year prior to his last date worked in 1991 as opposed to his date of injury in 1976. Accordingly, the injured worker's motion to adjust the rate of payment of permanent and total disability compensation is denied.
 {¶ 16} 9. On January 4, 2005, relator, Thomas White, filed this mandamus action.
Conclusions of Law:
 {¶ 17} Two issues are presented: (1) whether the commission abused its discretion in exercising continuing jurisdiction over the SHO order of December 9, 2003, and (2) whether the commission abused it discretion in denying relator's motion for an AWW adjustment.
 {¶ 18} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} Turning to the first issue, continuing jurisdiction is not unlimited. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by inferior tribunal. State exrel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97; 99; Stateex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454.
 {¶ 20} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. State ex rel. Gobich v. Indus.Comm., 103 Ohio St.3d 585, 587, 2004-Ohio-5990. The prerequisite must be both identified and explained to ensure that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. Id.
 {¶ 21} The commission, in its interlocutory order, identified and explained three prerequisites for the exercise of its continuing jurisdiction:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsidera-tion regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer misapplied Revised Code 4123.52 by finding an adjustment in excess of two years prior to the motion's filing, and the Staff Hearing Officer misapplied the Price case, and mistakenly limited the average weekly wage to $428.00 when the evidence indicated the average weekly wage should be $612.85.
 {¶ 22} In its March 16, 2004 order, the commission found that the SHO's order contained a clear mistake of fact because undisputedly the SHO set AWW at the statutory maximum PTD rate for a 1991 injury rather than at $612.85. The commission's March 16, 2004 order explains:
The Industrial Commission finds that it retains continuing jurisdiction to correct a clear mistake of fact, pursuant [to] O.R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm.
(1998) 81 Ohio St.3d 454. The Administrator has presented evidence of a clear mistake of fact in the Staff Hearing Officer order, dated 12/09/2003, which necessitates remedial action. Specifically, the parties agree that the Staff Hearing Officer's calculation of the injured worker's average weekly wage was incorrectly set at $428.00, and that the wage information establishes that during the year prior to 02/14/1991 (the last date of employment), he earned an average weekly wage of $612.85. * * *
 {¶ 23} According to relator, the commission's identification and explanation for the clear mistake of fact was "untenable if not disingenuous." (Relator's brief at 8.) According to relator:
It is true that the Staff Hearing Officer did not specifically state the relator's average weekly wage for 1991 was $612.85, the undisputed evidence established that $612.85 did sub-stantially exceed the statutory maximum of $428.00. Once that was apparent, the $612.85 figure exceeded the statutory maximum of $428.00 the $612.85 figure became irrelevant. Given the foregoing facts, the Commission's contention that the Staff Hearing Officer's Order contained a clear mistake of fact is misleading and wrong. The omission of an immaterial fact does not support the Commission's invocation of jur-isdiction under R.C. 4123.52, and the Commission's attempt to do so was an abuse of discretion.
(Relator's brief at 9-10.)
 {¶ 24} The magistrate disagrees with relator's argument. Clearly, the new calculation of AWW is not at all "irrelevant" or "immaterial" to the determination of a new PTD rate, assuming that relator could show that the Price case compelled the new calculation of AWW. The SHO order of December 9, 2003 incorrectly suggests that AWW and the PTD rate determined from AWW are equatable. Perhaps the SHO understood the distinction, but simply miscommunicated his decision. However, the commission speaks through its orders.
 {¶ 25} The SHO order of December 9, 2003 fails to determine and find relator's new AWW which relator claims to be $612.85. To simply find, in a parenthetical manner, that actual earnings in the year prior to the last date worked is well in excess of the statutory maximum for a 1991 injury is not sufficient. On its face, the SHO's order of December 9, 2003 contains a clear mistake of fact as the commission correctly found in its March 16, 2004 order. The commission correctly found a prerequisite for the exercise of continuing jurisdiction.
 {¶ 26} Turning to the second issue, following the commission's finding that the SHO's order contains a clear mistake of fact, the commission, in its March 16, 2004 order, states that it exercises its continuing jurisdiction to address the "merits" of relator's motion. The commission then determines that relator has not shown entitlement to the calculation of a new AWW based on Price.
 {¶ 27} Relator cannot show a clear legal right to a new AWW calculation under Price. Analysis here begins with a review and analysis of the Price case as well as some additional case authorities.
 {¶ 28} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 29} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 30} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 31} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, andState ex rel. Lemke v. Brush Wellman, Inc. (1998),84 Ohio St.3d 161.
 {¶ 32} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 33} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 34} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and 4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 35} After a lengthy discussion of its previous decision inLemke, the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. The Price court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C. 4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that" will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 36} Thus, the Price court (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61, and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 37} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguished Lemke; however, Gillette is instructive here.
 {¶ 38} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 39} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 40} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette
decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
 {¶ 41} The court's decision in State ex rel. Cawthorn v.Indus. Comm. (1997), 78 Ohio St.3d 112, 114, cited by theGillette court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's" special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 42} The court's decision in State ex rel. Clark v. Indus.Comm. (1994), 69 Ohio St.3d 563, is also instructive here. InClark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 43} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate" special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 44} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 45} Here, it is undisputed that AWW was initially set at $295.98 based upon relator's earnings during the year prior to the date of his May 9, 1977 industrial injury. Relator claims that he continued to work until February 14, 1991, when his industrial injury removed him from the workforce. Relator claims that, if AWW is calculated based upon his 1991 workforce departure, AWW should be set at $612.85. Thus, relator claims that he continued to work for almost 14 years beyond his industrial injury during which his earnings more than doubled. Clearly, those circumstances are not uncommon.
 {¶ 46} Moreover, the commission found in its March 16, 2004 order that an AWW of $295.98 is not so low as to "manifestly raise the spectre of inequity." The commission is correct in its determination.
 {¶ 47} The commission correctly determined that relator has not shown special circumstances for the recalculation of AWW under Price.
 {¶ 48} Clearly, the SHO order of December 9, 2003, misappliesPrice. In fact, the SHO's order sets forth a misstatement of the law:
Staff Hearing Officer finds that the purpose of compensation for Permanent Total Disability is to compensate for thepermanent loss of earnings, which of necessity must beprospective potential earnings; and that the most accurate measure of such are the earnings at the time Permanent TotalDisability brought about such loss, rather than the original injury that eventually resulted in Permanent Total Disability. * * *
 {¶ 49} There is no doubt that the SHO misconstrued Price
and other cases discussed above. The SHO's order on its face contains a clear mistake of law. The SHO misstates the law and then misapplies Price.
 {¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.