[Cite as *State ex rel. Brown v. Indus. Comm.*, 2016-Ohio-662.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dawn D. Brown, | : | |
| Relator, | : | |
| v. | : | No. 15AP-406 |
| The Industrial Commission of Ohio and The Laurels of Rockford, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 23, 2016

**On brief:** *Larrimer and Larrimer, Thomas L. Reitz,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

HORTON, J.

{¶ 1} Relator, Dawn D. Brown, filed this mandamus action after respondent, the Industrial Commission of Ohio ("commission"), denied Brown's request to reset the average weekly wage ("AWW") used to compute her worker's compensation benefit. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, whose decision is appended below and incorporated herein.

{¶ 2} In accordance with Civ.R. 53(D)(3), Brown has filed the following objections to the magistrate's decision:

> [I.] The Industrial Commission failed adequately [sic] explain its reasoning and failed cite [sic] any evidence supporting the

basis for declining to apply [R.C.] 4123.62(a) aka the Tender Years Doctrine.

[II.] The Industrial Commission failed adequately [sic] explain its reasoning and failed cite [sic] any evidence supporting the basis for declining to apply [R.C.] 4123.61 and/or the Tender Years Doctrine.

{¶ 3} To rule on these objections, we must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 4} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. "In order to grant a writ of mandamus, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State ex rel. Westchester Estates, Inc. v. Bacon*, 61 Ohio St.2d 42, 44 (1980). For the following reasons, we overrule Brown's objections and adopt the magistrate's decision in full.

{¶ 5} First, Brown has failed to demonstrate that she has a clear legal right to the relief prayed for in her complaint. She seeks an order vacating the commission's denial and finding that she is "entitled to an adjustment of [the] AWW," but provides no explanation of how the facts of her case support recalculating the AWW under the "tender years" doctrine codified in R.C. 4123.62(A) or the "special circumstances" outlined by R.C. 4123.61. Nor does she challenge the factual findings of the commission that supported its denial.

{¶ 6} Brown's sole attempt to connect the facts of her case with a legal right to recalculation of the AWW comes in her merit brief, where she states: "The Commission, however, fails to adequately explain how a 22 year old women [sic] who is injured while making $6.00 hours [sic], who stops working in 2001 to care for a premature baby and shows in increase [sic] in earning potential making $9.36 an hour in 2001 is anything other than a 'special circumstance' per [R.C.] 4123.61." (Relator's Brief, 5.) Brown cites no evidence that demonstrates how her wage increase of $3.36 from 1993 to 2001 was anything other than "a natural increase in earnings over the course of time," which, as

both the commission and the magistrate noted, is not a "special circumstance" within the meaning of R.C. 4123.61. *State ex rel. Stevens v. Indus. Comm.*, 110 Ohio St.3d 32, 2006-Ohio-3456, ¶ 10. With regard to the "tender years" doctrine, she makes no attempt to demonstrate how the facts of her case support recalculation of the AWW under R.C. 4123.62(A). "The relator bears a heavy burden in a mandamus case and must submit facts and produce proof that is plain, clear, and convincing." *State ex rel. William E. v. Indus. Comm.*, 10th Dist. No. 12AP-205, 2013-Ohio-1017, ¶ 9, citing *State ex rel. Stevens v. Indus. Comm.*, 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 7. Without any explanation of the basis of the clear legal right that she asserts, Brown's writ of mandamus must be denied.

{¶ 7} Rather than demonstrate how she is entitled to such relief, Brown principally argues, in both her merit brief and her objections, that the commission's decision failed to comply with *State ex. rel Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). In that case, the Supreme Court of Ohio had grown impatient with "formal, boilerplate incantations" by the commission "in cases too numerous to cite," which resulted in cases that were so cursory and devoid of analysis that they were "totally meaningless on review." *Noll* at 205. It, therefore, imposed the requirement that the commission "must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision" when granting or denying benefits. *Id.* at paragraph one of the syllabus. In support of her first objection, Brown argues that the commission did not cite any case law or evidence to support its conclusion that the "tender years" doctrine under R.C. 4123.62(A) did not apply, and the commission therefore ignored its obligation under *Noll.* (Objections, 2.) In support of her second objection, she repeats this argument with regard to the "special circumstances" provision under R.C. 4123.61 for determining an AWW. (Objections, 3.)

{¶ 8} Although presented as objections, Brown nowhere contests the magistrate's findings of fact or conclusions of law. In fact, she admits that "the magistrate provided an excellent historical recitation of Ohio law regarding the adjustment of an [AWW]" and describes the decision as "well researched." (Objections, 3.) Her primary complaint is that "the Commission provided neither such recitation nor any application of the facts in Ms. Brown's claim," and that the magistrate essentially did the commission's work for it.

(Objections, 3.) This assertion echoes the primary argument of her merit brief: that the commission failed to comply with *Noll.*

{¶ 9} However, the commission's report did not violate *Noll.* The decision, while brief, reviewed the facts in the record pertaining to Brown's wages and even corrected a "mistake of fact" in a previous order. (April 25, 2014 Record of Proceedings, 1.) It cited the proper provision of the Ohio Revised Code under which Brown's claim for a recalculation based on "special circumstances" arose and the relevant case law that, when applied to the record of Brown's wages, showed that she was not entitled to recalculation. (April 25, 2014 Record of Proceedings, 1.) Although the commission did not specifically cite R.C. 4123.62(A), the provision that codifies the "tender years" doctrine, it accurately described the doctrine in language that mirrored the statute. *Compare* April 25, 2014 Record of Proceedings at 2 (stating that the doctrine is "generally applied to those of very young age on the date of injury who have a career track which reflects an expectation of increased wages") *with* R.C. 4123.62(A) ("If it is established that an injured or disabled employee was of such age and experience when injured or disabled as that under natural conditions an injured or disabled employee's wages would be expected to increase, the [commission] may consider that fact in arriving at an injured or disabled employee's average weekly wage."). In Brown's case, the commission found that the record contained no facts to support an application of the "tender years" doctrine. This was not a failure to "state what evidence ha[d] been relied upon." *Noll* at 203. As the magistrate notes, Brown "submitted no evidence upon which the deputy could have relied to support an AWW adjustment under R.C. 4123.62(A)," which "indicate[s] the lack of a factual predicate" for her claim. (Appendix, ¶ 48.) Rather than any violation of the *Noll* standard, this simply indicates that Brown failed to prove her claim before the commission. We conclude that the magistrate appropriately applied the law to the facts, as did the commission. Brown has not demonstrated the clear legal right to the relief she requests. Consequently, Brown's objections are overruled, and the writ is denied.

*Objections overruled; writ denied.*

TYACK and LUPER SCHUSTER, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Dawn D. Brown, | : | |
| Relator, | : | |
| v. | : | No. 15AP-406 |
| Industrial Commission of Ohio and The Laurels of Rockford, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on November 23, 2015

---

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 10} In this original action, relator, Dawn D. Brown, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the March 20, 2014 order of its deputy denying relator's November 18, 2013 motion to reset her average weekly wage ("AWW"), and to enter an order resetting AWW at $400.48.

Findings of Fact:

{¶ 11} 1. On November 9, 1993, relator injured her right knee and lower leg while employed at Shane Hill Nursing Home ("Shane") located in Rockford, Ohio.

{¶ 12} 2. On November 16, 1993, relator completed a document provided by the Ohio Bureau of Workers' Compensation ("bureau") captioned "Application for payment of

Compensation and Medical Benefits." The bureau designated the form as a C-1. At part I of the C-1 form, relator indicated that her occupation or job title at the time of injury was "Nursing Assistant." Relator also indicated that her date of birth is June 4, 1971. Thus, on her injury date, relator was 22 years of age.

{¶ 13} 3. Part II of the C-1 is the "Employer's Report." There, the employer is asked to state the claimant's hourly rate of pay the week that the injury occurred. The employer indicated that $6.00 was the hourly rate of pay. The employer is also asked to state the number of hours claimant was scheduled to work the week of the injury. In response, the employer wrote "31 Hours."

{¶ 14} 4. In February 1994, on bureau form C-31, a bureau claims examiner completed a bureau worksheet calculating AWW to be $181.94 based upon the C-1 on file.

{¶ 15} 5. On November 18, 2013, some 20 years after her industrial injury, relator moved that her AWW be reset at $290.16. In support, relator submitted a Shane paystub showing that for the period ending June 16, 2001 relator was employed for 5.5 hours at the rate of $9.36 per hour.

{¶ 16} In her motion, relator calculated that her AWW should be reset at $290.16 based upon her $9.36 rate of pay and the "31 Hours" listed on the C-1 by the employer. ($9.36 x 31 hours = $290.16.)

{¶ 17} 6. Following a December 16, 2013 hearing, a district hearing officer ("DHO") issued an order denying relator's motion to reset AWW. The DHO explained:

> The District Hearing Officer denies the Injured Worker's request to reset her Average Weekly Wage at $290.16 based upon Ohio Revised Code 4123.61 and the fact that the Injured Worker was of tender years at the time of injury (22 years old). The Injured Worker's motion indicates the Injured Worker was earning $9.36 per hour times a 31 hour work week in June of 2001, at which time her employment ended with the Employer of Record. The District Hearing Officer finds the 06/22/2001 pay stub submitted to the claim file reflects that the Injured Worker was making $9.36 an hour, but also reflects that the Injured Worker only worked a 5.50 hour work week. The District Hearing Officer finds it notable that the Injured Worker's 03/25/2011 pay stub reveals the Injured Worker was only making $8.56 per hour and had only worked 9 hours over a two week pay period. The District Hearing Officer finds the Injured Worker submitted no evidence of advancement within her profession

due to age and experience or any other profession. It appears to this District Hearing Officer, that the Injured Worker's increase in wages, since 1993, was due to economic factors versus the Injured Worker's increase in age and experience. Therefore, this District Hearing Officer finds a lack of evidence supporting/constituting special circumstances for purposes of adjusting/increasing the Injured Worker's Average Weekly Wage.

{¶ 18} 7. Relator administratively appealed the DHO's order of December 16, 2013.

{¶ 19} 8. Following a January 30, 2014 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO explains:

The order of the District Hearing Officer, from the hearing issued 12/19/2013, is modified with the following rationale. Therefore, the C-86 Motion filed by the Injured Worker filed 11/18/2013, is denied.

The Injured Worker's counsel made argument that the "Tender Years" Doctrine should be applied to reset the Injured Worker's average weekly wage at $290.16. This argument is not found to be persuasive.

The Tender Years Doctrine is often used to increase an Injured Worker's average weekly wage when the injury occurs while the Injured Worker is relatively young. Therefore, over the ensuing years the Injured Worker's salary increases and as such, to do substantial justice, the average weekly wage, is adjusted upward. However, in this matter the Injured Worker testified she worked three to four days a week with the Employer of record at the time of injury. At that time, she was earning over $9.00 an hour. Currently, she is scheduled 35 hours a week earning $8.95 an hour. This Staff Hearing Officer does not find that the Injured Worker is [sic] shown an increase in wages such that the Tender Years Doctrine should be applied. The Injured Worker is involved in approximately the same number of hours per week worked and, in fact, has a lower wage now than at the time of the injury.

As such, this Staff Hearing Officer does not find it appropriate to apply the "Tender Years" Doctrine to increase the Injured Worker's average weekly wage. The remainder of the District Hearing Officer's order, not in conflict with this order, remains in full force and effect.

{¶ 20} 9. Relator administratively appealed the January 30, 2014 order of the SHO to the three-member commission. In support, relator submitted a memorandum. Attached to the memorandum as exhibits are copies of five W-2s for the year 2013. The year 2013 employers and the wages earned by relator that year are as follows:

| Employers | Total Yearly Wages |
|---|---|
| Champaign Residential Services, Inc. | $19,421.50 |
| AWS | $522.24 |
| Parkway Local Schools | $109.70 |
| Van Wert City Schools | $336.13 |
| Mercer County Board of Education | $435.25 |

{¶ 21} 10. In further support of her administrative appeal, relator's memorandum submits a calculation of AWW at $400.48. In that calculation, relator totals her wages from the five employers. That total is $20,824.82. She then divides the total wages by 52 weeks. ($20,824.82 ÷ 52= $400.48.)

{¶ 22} 11. In her memorandum in support of her administrative appeal, relator states:

> She stopped working with the employer of record in 2001 as she gave birth to a premature baby at that time. Subsequently she has gone on to re-enter the work force for years and now works as a support specialist for developmentally disabled individuals.
>
> Ms. Brown's main employment is with Champaign Residential Services Inc. where she earns $8.55 per hour. She works on a part-time basis, but supplements this income with four additional employers; AWS; Mercer County Board of Education; Van Wert City Schools; and Parkway Local Schools. We have W2 forms for 2013 for all five employers showing her current average weekly wage is $400.48.

{¶ 23} 12. Exercising their discretion to hear relator's administrative appeal from the SHO's order of January 30, 2014, the commission appointed a deputy.

{¶ 24} 13. Following a March 20, 2014 hearing, the deputy issued an order that was unanimously approved by the three-member commission.  The deputy's order states:

> It is the order of the Deputy that the order of the Staff Hearing Officer, from the hearing dated 01/30/2014, is vacated. The C-86 Motion, filed 11/18/2013, is denied.
>
> The Deputy finds that indeed there was a mistake of fact with respect to the underlying order. By way of history, the Injured Worker was earning $6.00 an hour in 1993 when she sustained her injury. The average weekly wage was set by the Bureau of Workers' Compensation at $181.94.
>
> The Injured Worker worked intermittently during the next 21 years. In 2001, the W-2s on file indicate that the Injured Worker was earning $9.36 an hour. The Injured Worker submitted five W-2 documents for the tax year 2013, which shows significant earnings in the range of $400.48 in earnings per week.
>
> The Injured Worker's C-86 Motion requests that the average weekly wage be recalculated based upon special circumstances as described in 4123.61 of the Ohio Revised Code, as well as the Doctrine of Tender Years. Unfortunately, this Deputy finds that neither authority applies to the facts in the case.
>
> 4123.61 of the Ohio Revised Code calls for an adjustment to the average weekly wage standard formula when the average weekly wage "cannot justly be determined by applying this section." The Supreme Court examined this very issue in the case of State ex rel. Stevens v. Industrial Commission, 110 Ohio St.3d 32[, 2006-Ohio-3456]. This Court noted that the erosion of the originally set average weekly wage over time will "eventually happen to every Injured Worker whose claim stays active long enough."
>
> The Doctrine of Tender Years is generally applied to those of very young age on the date of injury who have a career track which reflects an expectation of increased wages. This notion harkens back to the days of apprenticeships and those working in journeymen status. The Deputy finds no such facts indicated in this particular claim. For this reason, the Deputy declines the adjustments pursuant to the Doctrine of Tender Years.

{¶ 25} 14.  On April 13, 2015, relator, Dawn D. Brown, filed this mandamus action.

Conclusions of Law:

{¶ 26} Two issues are presented: (1) did the commission abuse its discretion in determining that relator failed to prove entitlement to a reset of her AWW under the "age and experience" provision of R.C. 4123.62(A), and (2) did the commission abuse its discretion in determining that relator failed to prove entitlement to a reset of her AWW under the "special circumstances" provision of R.C. 4123.61.

**Relevant Statutes**

{¶ 27} On the date of relator's injury, i.e., November 9, 1993, former R.C. 4123.61, effective October 20, 1993, stated:

> The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.
>
> * * *
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
>
> Effective June 30, 2006, R.C. 4123.61 currently provides:
>
> The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
>
> * * *
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, *provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.*

**(Emphasis added.)**

{¶ 28} It can be noted that, since relator's injury date, R.C. 4123.61 was amended by the addition of the italicized wording as noted above.

{¶ 29} On the date of relator's injury, i.e., November 9, 1993, former R.C. 4123.62, effective October 20, 1993, stated:

> (A) If it is established that an injured or disabled employee was of such age and experience when injured or disabled as that under natural conditions his wages would be expected to increase, the administrator of workers' compensation may consider that fact in arriving at his average weekly wage.

{¶ 30} Effective July 1, 2000, R.C. 4123.62 currently provides:

> (A) If it is established that an injured or disabled employee was of such age and experience when injured or disabled as that under natural conditions an injured or disabled employee's wages would be expected to increase, the administrator of workers' compensation may consider that fact in arriving at an injured or disabled employee's average weekly wage.

{¶ 31} It can be noted that the current version of R.C. 4123.62 is not significantly different than the version in effect on the date of relator's injury.

### First Issue

{¶ 32} The relevant case law begins with *Indus. Comm. v. Royer,* 122 Ohio St. 271 (1930), a case decided by the Supreme Court of Ohio over 85 years ago. *Royer* provides guidance regarding the applicability of R.C. 4123.62(A) at issue here.

{¶ 33} The *Royer* court interpreted Section 1465-84, a predecessor statute that read essentially the same as the current R.C. 4123.62(A). Regarding Section 1465-84, the *Royer* court stated:

> In the absence of legislative interpretation, we are of the opinion that age and experience should only be considered in the case of persons of immature years, who have not yet become skillful in the particular employment in which they were engaged at the time of the injury. Those terms should not be held to apply to all ambitious persons on the sole ground that they aspire to promotion in more important, more skillful, and more remunerative employment.

*Id.* at 276.

{¶ 34} In *State ex rel. Weil v. Indus. Comm.,* 10th Dist. No. 01AP-1242, 2002-Ohio-4774, this court had occasion to apply *Royer.*

{¶ 35} Emma Weil was injured on September 7, 1985 while employed as a part-time waitress for Frisch's Enterprises, Inc. Weil was 20 years old at the time of her industrial injury and was studying to take the GED, having dropped out of high school at age 17 to have her first child. *Id.* at ¶ 6. (Appendix Magistrate's Decision.)

{¶ 36} After obtaining her GED, Weil pursued college coursework and obtained a post-high school degree. *Weil* at ¶ 7. (Appendix Magistrate's Decision.)

{¶ 37} In October 1989, some four years after her injury at Frisch's, Weil obtained a job as an office manager. During the years 1993 through 1997, Weil had earnings of over $25,000 per year from her office manager job. In 1994, Weil earned $27,133 at this job. *Weil* at ¶ 8. (Appendix Magistrate's Decision.)

{¶ 38} Apparently, in 1998, relator underwent surgery and was awarded temporary total disability ("TTD") compensation based upon her September 7, 1985 industrial injury. TTD compensation was apparently paid based upon Weil's pre-injury earnings record at Frisch's. *Weil* at ¶ 9. (Appendix Magistrate's Decision.)

{¶ 39} In February 2001, Weil moved for an adjustment of her AWW based upon her office manager job. *Weil* at ¶ 10. (Appendix Magistrate's Decision.)

{¶ 40} Ultimately, in *Weil,* the commission denied the motion for an AWW adjustment. The commission's order held that Weil was not entitled to an AWW adjustment under R.C. 4123.62(A).

{¶ 41} Adopting the decision of its magistrate, this court, in *Weil,* upheld the decision of the commission and denied the writ. Speaking through its magistrate, this court, in *Weil,* explained:

> Given the above authorities, it is clear that R.C. 4123.62(A) applies only when a person of immature years could have expected an increase in wages in the employment in which he or she was engaged at the time of injury.
>
> Accordingly, R.C. 4123.62(A) cannot be applied to the facts of the instant case. There is no evidence that, because of her age and experience, relator reasonably expected increased earnings at Frisch's.

> That relator was ambitious enough to obtain her GED, successfully pursue college course work, and thus obtain a better paying job as an office manager does not entitle her to an adjustment of her AWW or FWW under the *Royer* rationale.

*Id.* at ¶ 42-44.

{¶ 42} Here, we know that on the date of her injury in November 1993, relator was employed as a "nursing assistant" at the nursing home. At that time, relator was earning $6.00 per hour and she had worked 31 hours during the week prior to the injury. We further know that relator continued her employment at the nursing home for some seven to eight years until June 2001 when she was earning $9.36 per hour. Her employment with the nursing home ended in June 2001 because she gave birth to her premature baby. By the year 2013, as shown by the submitted W-2s, relator had re-entered the workforce earning substantially more than she did at the time of her injury or at the time she left her employment at the nursing home.

{¶ 43} Based upon the above-described employment history, the commission's deputy determined that an adjustment of AWW under R.C. 4123.62(A) (the so-called tender years doctrine) was not justified.

{¶ 44} Here, the commission argues in support of the deputy's determination:

> While Brown was injured at the age of 22, she has not indicated whether she had just begun her work as a nursing assistant or whether she already had some years of experience in that field. She made no attempt to show that a beginning nursing assistant could expect to be rewarded with wage increases as she gained experience. Brown did demonstrate that, eight years after her injury, she was making more money in the same position, but there is no evidence that this was anything other than a function of the economy.

(Respondent's Brief, 9-10.)

{¶ 45} The commission here makes a good point. In fact, there is no evidence in the record to support relator's motion for an adjustment of her AWW under R.C. 4123.62(A).

{¶ 46} To begin, the W-2 evidence relating to relator's earnings during the year 2013, long after she had left employment at the nursing home, is irrelevant to her R.C.

4123.62(A) claim. This is so because the so-called tender years doctrine applies only to the particular employment in which the claimant was engaged at the time of his or her injury. *Royer; Weil.* Relator was not employed as a nursing assistant subsequent to her June 2001 departure from her employment at the nursing home.

{¶ 47} As the deputy put it in his order, the tender years doctrine "is generally applied to those of very young age on the date of injury who have a career track which reflects an expectation of increased wages." Contrary to what is suggested here by relator, the deputy's statement is consistent with the law set forth in this magistrate's decision.

{¶ 48} In the magistrate's view, contrary to the urging of relator here, the deputy's order complies with *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). This is particularly so given that relator submitted no evidence upon which the deputy could have relied to support an AWW adjustment under R.C. 4123.62(A). While the deputy's order may not be a model of clarity, it does indicate the lack of a factual predicate to support an AWW adjustment under R.C. 4123.62(A).

{¶ 49} Accordingly, based upon the above analysis, the commission did not abuse its discretion in determining that relator failed to prove entitlement to a reset of her AWW under the "age and experience" provision of R.C. 4123.62(A).

### Second Issue

{¶ 50} In *State ex rel. Stevens v. Indus. Comm.*, 110 Ohio St.3d 32, 2006-Ohio-3456, the court held that a natural increase in earnings over the course of time is not a "special circumstance" under R.C. 4123.61 that is sufficient to justify recalculation of an individual's AWW. In reaching this holding, the *Stevens* court overruled two of its prior decisions.

{¶ 51} The *Stevens* court succinctly set forth the problem before it:

> Average weekly wage is based on earnings during the year preceding injury or the onset of occupational disease. R.C. 4123.61. Thus, what may have been, for example, fair compensation in 1980 generally falls far short in 2006, and this circumstance, in turn, generates requests for a resetting of the average weekly wage under the "special circumstances" provision of R.C. 4123.61.

*Id.* at ¶ 5.

{¶ 52} Citing *State ex rel. Wireman v. Indus. Comm.,* 49 Ohio St.3d 286 (1990), the *Stevens* court noted that "special circumstances" have generally been confined to uncommon situations. Citing two prior cases, the *Stevens* court observed that it had emphatically stated that a natural increase in wages over the course of an employee's career is *not* uncommon and, hence, is not a special circumstance warranting a departure from the standard calculation.

{¶ 53} The *Stevens* court concluded its opinion:

> We also repeat our entreaty to the General Assembly to address this shortcoming in the workers' compensation system and fashion a method to allow the average weekly wage to more accurately reflect, over time, the economic realities of the individual claimant or the economic landscape as a whole. Until then, however, we cannot permit the special-circumstances provision of R.C. 4123.61 to be the remedy to resolve this problem.

*Id.* at ¶ 13.

{¶ 54} Here, it is clear that *Stevens* compels the denial of relator's claim that her post-injury increase in earnings is a special circumstance under R.C. 4123.61 such that she is entitled to a reset of her AWW.

{¶ 55} It has already been shown that the increase in her rate of pay from $6.00 per hour to $9.36 per hour over a seven to eight year period at her job of injury does not justify an AWW reset under R.C. 4123.62(A). Neither can the increase in her rate of pay at her job of injury create a special circumstance under R.C. 4123.61.

{¶ 56} Moreover, relator's earnings during the year 2013 arguably showing a weekly wage of $400.48 does not provide a justification for an adjustment of her AWW under the special circumstances provision of R.C. 4123.61. Clearly, *Stevens* prohibits the commission from adjusting the AWW based upon the 2013 earnings occurring some 20 years after the industrial injury.

{¶ 57} Therefore, based upon the foregoing analysis, the magistrate finds that the commission did not abuse its discretion in determining that relator failed to prove entitlement to a reset of her AWW under R.C. 4123.61.

{¶ 58} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).